RIKER, DANZIG, SCHERER,
      HYLAND & PERRETTI LLP
Joseph L. Schwartz, Esq. (Admitted *Pro Hac Vice*)
Jonathan P. Vuotto, Esq. (JV-1630)
Kevin J. Larner, Esq. (KL-8627)
Headquarters Plaza, One Speedwell Avenue
P.O. Box 1981
Morristown, New Jersey 07962-1981
(973) 538-0800

-and-

RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP
500 Fifth Avenue, Suite 4920
New York, New York 10110
(212) 302-6574

Attorneys for Plaintiff, Ginsburg Development Companies, LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>RIDGEMOUR MEYER PROPERTIES, LLC,<br><br>                            Debtor. | Chapter 11<br><br>Case No. 08-13153 (SMB) |
| GINSBURG DEVELOPMENT COMPANIES, LLC,<br><br>                            Plaintiff,<br><br>v.<br><br>KENNETH P. SILVERMAN, as Trustee for RIDGEMOUR MEYER PROPERTIES, LLC,<br><br>                            Defendant. | Adv. Pro. No.<br><br><br><br>**COMPLAINT TO ESTABLISH EXTENT AND VALIDITY OF EQUITABLE MORTGAGE** |

Plaintiff, Ginsburg Development Companies, LLC ("GDC"), by and through its counsel, Riker, Danzig, Scherer, Hyland & Perretti LLP, by way of Complaint to Establish Extent and Validity of Equitable Mortgage against real property titled in the name of the Debtor, Ridgemour Meyer Properties, LLC (the "Debtor"), alleges as follows:

## JURISDICTION AND VENUE

1. This is an adversary proceeding pursuant to Fed. R. Bankr. P. 7001, et seq., seeking to prove the extent and validity of a lien asserted by GDC in and against certain real property titled in the name of the Debtor.

2. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334.

3. Venue properly lies in this Court pursuant to 28 U.S.C. § 1409(a).

4. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (K) and (O).

## PARTIES

5. Ginsburg Development Companies, LLC f/k/a Ginsburg Development, L.L.C. ("GDC") is a New York limited liability company with a principal office located at 100 Summit Lake Drive, Suite 100, Valhalla, New York 10595. GDC is now and at all relevant times was a 50% member of The Pinnacle-Westchester, LLC ("Pinnacle"), which is a New York limited liability company with its principal office located at 100 Summit Lake Drive, Suite 100, Valhalla, New York 10595.

6. Upon information and belief, the Debtor is a New York limited liability company with an office located at 41 Union Square West, Suite 507, New York, New York 10003.

7. Kenneth P. Silverman (the "Trustee") is an individual who was appointed Chapter 11 trustee for the Debtor by the Office of the United States Trustee and who accepted that appointment on or about November 20, 2008.

## FACTS

8. In December 2003, after more than nine months of negotiations, GDC entered into a joint venture agreement with the Debtor, the other 50% member of Pinnacle, for the purpose of acquiring certain properties and rights and to "invest in, design, market, develop and construct … a residential apartment building with commercial/retail space and a parking garage as set forth in site plans submitted to the City of White Plains (the "Project") and thereafter to sell the residential units in the Project and own and operate the commercial retail units and parking garage." (See Operating Agreement of The Pinnacle-Westchester, LLC (the "Operating Agreement"), attached as **Exhibit A**, at 1).

9. Pursuant to the Operating Agreement, GDC agreed to contribute up to $4 million in capital to Pinnacle, and the Debtor agreed to assign to Pinnacle all of its rights, title and interest to (i) a certain parcel of real estate located at 248-252 Main Street in White Plains, New York, designed as Lot 5, Block 6, Section 125.68 on the tax map of the City of White Plains (the "Primary Lot") that was subject to a mortgage in the approximate amount of $3,386,000 held by an entity known as Merida Associates, Inc., (ii) a certain contract of sale that the Debtor held, as purchaser, with respect to real property located on South Broadway in White Plains, New York, designated as Lot 7, Block 6, Section 125.68 on the tax map of White Plains (the "Back Lot"), (iii) a portion of the air rights to a certain parcel of real property located at 258-270 Main Street in White Plains, New York, designated as Lot 6, Block 6, Section 125.68 on the tax map of the City of White Plains (the "Jomas Lot") and (iv) a proposed contract with Citibank, N.A. that the

3

Debtor was to hold, as purchaser, covering real property located at 244 Main Street in White Plains, New York. (See Operating Agreement, attached as **Exhibit A**, at 10-11, § 3.1(a)). (The Primary Lot, Back Lot and Jomas Lot shall be collectively referred to as the "Properties.") GDC and the Debtor agreed that the fair market value of the Debtor's capital contribution to Pinnacle was $650,000. (See id.)

10. Over the course of the Pinnacle joint venture, GDC and/or Martin Ginsburg, GDC's principal, incurred "Acquisition Financing" debt on behalf of Pinnacle in the total amount of $4,957,000, as follows:

  i. in order for Pinnacle to acquire the Back Lot, GDC obtained an unsecured loan from Union State Bank, which was later replaced with an unsecured loan from Hudson Valley Bank, in the amount of $1,500,000; and

  ii. in order for Pinnacle to acquire the Jomas Lot after the Debtor purchased from Jomas Lot, GDC obtained an unsecured loan from Wachovia Bank in the amount of $3,457,000.

11. Pursuant to the Operating Agreement, GDC and the Debtor further agreed that, in addition to the initial capital contributed by the parties to the Pinnacle joint venture, additional funds would likely be necessary to develop the Project ("Mezzanine Financing"). (See Operating Agreement, attached as **Exhibit A**, at 14, § 4.4).

12. To the extent that such additional funds became necessary, GDC and the Debtor agreed that such additional funds would be obtained either: (i) by GDC from an institutional lender ("Institutional Mezzanine Financing"); or (ii) from either of the members, on the same terms as the best terms proposed by an institutional lender ("Member Mezzanine Financing"). (See Operating Agreement, attached as **Exhibit A**, at 14, § 4.4(a)-(b)).

13. Pursuant to the Operating Agreement, in the event that GDC was unable to obtain Institutional Mezzanine Financing, and the Debtor did not wish to provide Member Mezzanine Financing, GDC would be required to provide the Member Mezzanine Financing at the prevailing Mezzanine Financing rate. (See Operating Agreement, attached as **Exhibit A**, at 15, § 4.4(c)).

14. Over the course of the joint venture, GDC provided Pinnacle with Member Mezzanine Financing in the principal amount of $5,869,000 at a Mezzanine Financing interest rate of 18%, which was consistent with then-prevailing mezzanine financing rates. The amount of accrued interest as of November 19, 2008 on GDC's Member Mezzanine Financing is $2,266,001.50. Thus, the total amount of loans made by GDC to Pinnacle as Member Mezzanine Financing, together with interest as of November 19, 2008, is $8,135,001.50.

15. Martin Ginsburg, GDC's principal, and GDC provided Pinnacle with Member Mezzanine Financing in order for Pinnacle to pay its mortgage interest, real estate taxes, affiliate fees, development costs for the Project and various other operating expenses, which Pinnacle could otherwise not pay.

16. The Debtor refused at all times to provide any Member Mezzanine Financing and compelled GDC to do so.

17. In December 2006, GDC demanded arbitration to break a deadlock between GDC and the Debtor with respect to whether to dissolve the Pinnacle joint venture or proceed with the Project (the "Arbitration").

18. After conducting several days of hearings in the Arbitration, on June 18 and June 19, 2008, Arbitrator Thomas Scarola (the "Arbitrator") determined that Pinnacle would be dissolved and that the Debtor could obtain control of the Properties in exchange for granting

5

GDC a mortgage in the amount of GDC's interest in Pinnacle and other consideration. In connection with that determination, the Arbitrator directed that the Debtor could choose to either obtain control of the Properties in exchange for giving GDC the aforementioned mortgage, or, if that was unacceptable, the Debtor would not obtain control of the Properties and Pinnacle would be dissolved by some alternative method.

19.  The Debtor chose to accept control of the Properties and to grant GDC a mortgage on the Properties.

20.  On July 9, 2008, the Arbitrator formally issued an interim arbitration award (the "Interim Award"), which memorialized, among other things, the Arbitrator's orders that Pinnacle be dissolved and that the Debtor would obtain control of the Properties and give GDC a note and mortgage to be secured by the Properties in the amount of $14,629,000 (the "GDC Mortgage"). A true and correct copy of the Interim Award is attached hereto as **Exhibit B**.

21.  The amount of the GDC Mortgage, as determined by the Arbitrator, represented GDC's investment in and debt incurred on behalf of Pinnacle, including the aforementioned capital contribution, the debt incurred for Pinnacle's Acquisition Financing and funds loaned to Pinnacle as Member Mezzanine Financing, but did not include the interest on GDC's Member Mezzanine Financing.

22.  Prior to the issuance of the Interim Award, on June 30, 2008, the Debtor clandestinely and improperly executed draft deeds (the "Deeds") that purported to transfer title to the Properties from Pinnacle to the Debtor. The Debtor concealed from GDC and the Arbitrator its attempt to transfer title to the Properties from Pinnacle to the Debtor.

23.  On August 4, 2008, after GDC discovered the Debtor's improper execution and recordation of the Deeds and brought this to the attention of the Arbitrator, the Arbitrator

ordered, among other things, that the Debtor deliver to GDC the personal guarantees of the Debtor's Managers and principals, A.J. Rotonde and William Meyer, a letter of credit in the amount of $3.5 million, and that the Debtor execute the GDC Mortgage and related documents on or before August 12, 2008. A true and correct copy of the Arbitrator's August 4, 2008 directive is attached hereto as **Exhibit C**.

24. On August 11, 2008, before the GDC Mortgage was executed and in a clear attempt to avoid the obligations set forth in the Arbitrator's orders, and specifically the imposition of the GDC Mortgage, the Debtor filed its Chapter 11 petition with this Court.

25. As a result of the Debtor's improper execution of the Deeds, the Properties allegedly became property of the Debtor's estate notwithstanding the fact that the Debtor never granted GDC the required GDC Mortgage, personal guarantees and letter of credit that the Arbitrator had ordered the Debtor to provide in exchange for the Debtor's obtaining ownership of the Properties.

26. On August 25, 2008, the Debtor filed its Schedules. On its Schedule D, the Debtor failed to list GDC as a secured creditor in the amount of $14,629,000. Rather, on its Schedule F, the Debtor listed GDC as a disputed unsecured creditor in the amount of $14,629,000. A true and correct copy of the Debtor's Schedules is attached hereto as **Exhibit D**.

27. On August 25, 2008, GDC moved to dismiss the Debtor's bankruptcy case, or, alternatively, for the appointment of a Chapter 11 trustee (the "Motion"), as a result of, *inter alia*, the Debtor's improper transfer of the Properties from Pinnacle to itself.

28. On October 6, 2008, GDC filed a proof of claim with the Court, which included GDC's secured claim in the amount of $14,629,000, which was based upon the GDC Mortgage imposed by the Interim Award.

3904286.1

29.     After three days of evidentiary hearings in connection with the Motion, on November 12, 2008, the Court ordered the appointment of a Chapter 11 trustee. The Trustee was thereafter appointed Chapter 11 trustee for the Debtor.

30.     As set forth in its November 12, 2008 Decision and Order, this Court found that the Debtor and its professionals "acted dishonestly when they caused Pinnacle to transfer the Property secretly to the [D]ebtor, knowing that the delivery of a mortgage and other protections to GDC was a quid pro quo for the conveyance and that Rotonde lacked the authority to execute the deeds drafted by GDC as the agent for Pinnacle." (See Memorandum Decision and Order Granting Motion to Appoint Chapter 11 Trustee, attached hereto as **Exhibit E**, at 18).

## FIRST COUNT

### (Validity of Mortgage)

31.     GDC repeats and realleges all of the allegations contained in paragraphs 1 through 30 of the Complaint as if fully set forth at length herein.

32.     Pursuant to the Interim Award, the Arbitrator ordered, among other things, that the Debtor would obtain control of the Properties and, as a quid pro quo, would give GDC a note and mortgage to be secured by the Properties in the amount of $14,629,000.

33.     On June 30, 2008, without notifying GDC, Pinnacle or the Arbitrator, the Debtor improperly executed the Deeds, which purported to transfer title to the Properties from Pinnacle to the Debtor.

34.     On August 4, 2008, the Arbitrator ordered, among other things, that the Debtor deliver to GDC the aforementioned personal guarantees and letter of credit, and that the Debtor execute the GDC Mortgage and related documents on or before August 12, 2008.

35. On August 11, 2008, before the GDC Mortgage was executed and in a clear attempt to avoid the obligations of the Arbitrator's orders, and specifically the imposition of the GDC Mortgage, the Debtor filed its Chapter 11 petition.

36. To the extent the Debtor validly holds title to the Properties, GDC has an equitable mortgage secured by the Properties in the amount of $14,629,000.

**WHEREFORE**, GDC requests the entry of an Order:

(i) Declaring that GDC has a valid equitable mortgage on the Properties in the amount of $14,629,000; and

(ii) Awarding such other and further relief as the Court may deem just, proper and equitable.

Dated: New York, New York
November 21, 2008

                      RIKER, DANZIG, SCHERER, HYLAND
                         & PERRETTI LLP

                      By: /s/ Joseph L. Schwartz_____
                         Joseph L. Schwartz, Esq. (Admitted *Pro Hac Vice)*
                         Kevin J. Larner, Esq. (KL-8627)
                         Jonathan P. Vuotto, Esq. (JV-1630)
                         One Speedwell Avenue
                         Morristown, NJ 079262-1981
                         (973) 538-0800
                            *-and-*
                         500 Fifth Avenue
                         Suite 4920
                         New York, New York 10110
                         (212) 302-6574

                      *Attorneys for Plaintiff, Ginsburg Development*
                      *Companies, LLC*